CLIFFORD HUGHES v. THE STATE.

No. 14952. Delivered May 11, 1932.
Rehearing Denied June 15, 1932.
Reported in 50 S. W. (2d) 824.

The opinion states the case.

*H. S. Beard* and *H. L. Heatly,* both of Waco, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for theft of property over the value of $50, punishment being two years in the penitentiary.

The property alleged to have been stolen belonged to R. A. Brown. The evidence shows that Brown and one Martha Haft had been engaged in periodic escapades which usually resulted in them spending the night together in some tourist camp in Waco. On the night of January 29, 1930, he and the young woman went in Brown's car to the LaVega Tourist Camp, got a room, and went to bed. Brown had a purse containing $35 in money, a watch and a pistol. He put the purse under the mattress, laid the watch on the table, and put the pistol on a shelf. After these parties had been in bed for some time appellant came to the room and called the young woman, advising her that he had information that her mother was sick, whereupon she said she wanted to go and telephone her mother. She opened the door and rushed out, and as she did so appellant and one Bailey rushed into the room and grappled with Brown. According to the state's testimony, this resulted in their getting the $35, the watch, and the pistol. Brown said that while he was engaged in a scuffle with Bailey he saw appellant on the bed with the mattress turned up. He never recovered any of the property. The state's evidence showed the watch to be of the value of $15, and the pistol $15, making the total value of the property taken $65. Brown did not report the matter to the police for a month thereafter. He says the reason of the delay was because he did not know the two men who had taken his property; that he suspected the young woman with him was a party to the offense, and knew it was only through her he would be able to ascertain who the parties were. Appellant's contention was that the young woman was threatening to institute a breach of promise suit against Brown, and that it was this threat which prompted him to report the alleged theft to the officers. Appellant's theory of the incidents occurring at the tourist camp was that he had been informed by a friend of Martha Haft that her mother was sick; that he had been trying to locate her and communicate the information to her, and had gone to several tourist camps for that purpose; that he had seen her with Brown

earlier in the evening and knew Brown's car, and located it at the LaVega Tourist Camp; that he went into the room where Brown and the young woman were for the purpose of assisting her in getting her hat and coat; that Brown picked up the pistol which caused appellant to engage in a scuffle with him over the pistol because he feared Brown was going to shoot him; that appellant called out for Bailey to come to his aid; that they secured the pistol, and that Bailey threw it away after they left the room. Appellant admitted that he saw a watch on the table, but claimed he did not see any money. He denied taking either the watch or money. The foregoing appears to be a sufficient statement of the facts.

In bill of exception No. 1 appellant complains because the owner of the watch gave testimony that its value at the time of the theft was $15. He had testified that he knew its reasonable market value in Waco at the time. He had also testified that he had bought several watches in Marlin, where he lived, and knew the market value of watches there, where he said the same values obtained as at Waco. We see no error in receiving this testimony. Other witnesses also qualified and gave testimony that the reasonable market value of the watch was $15. The evidence offered in behalf of appellant was that the value of the watch was much less than that placed upon it by the state's witnesses. However, this presented a question solely for the jury.

Bills Nos. 5 and 6 relate to evidence given as to the market value of the pistol and also of the watch. We observe no error in admitting the evidence. The witnesses qualified to speak regarding the matter. Very much the same question is presented as in bill No. 1.

Bill of exception No. 2 shows that, upon cross-examination of Brown, appellant's counsel asked him why he had waited so long to report the theft. In reply, Brown related his efforts to identify the persons who had taken his property and then related a telephone conversation with Miss Haft in which she told him who the parties were. Appellant objected to the telephone conversation as hearsay. The answer of the witness was elicited by a question from appellant's attorney and appears to have been responsive thereto. If it was thought not to have been responsive, the proper practice would have been to request the court to exclude that part not thought to have been in reply to the inquiry. Even if hearsay, the evidence could not have injured appellant. Miss Haft testified that appellant and Bailey were the parties who came to the room and appellant himself testified to the same fact.

Bill of exception No. 3 presents the question of alleged newly discovered evidence set up in the motion for new trial. Brown had testified that he had three $10 bills and one $5 bill in a purse which he described and claimed that this property had been taken at the time of the theft. Attached to the motion for new trial was the affidavit of the newly discovered witness, one L. S. Torrance, Jr., who made oath that during the

last of January, or first of February, he went to the LaVega Tourist Camp looking for Tommy Russel and Brownie Jackson, whom he understood were stopping there, and that, while looking for them, he went into the third or fourth cabin from the road and found on the floor a pocket book which in all respects tallied with the one Brown had lost, and that in it were three $10 bills and one $5 bill; that he went back to town and met Cecil Smith and told him about finding the money and togethey they spent part of it. The state controverted the motion on the question of newly discovered evidence and introduced testimony on the issue. So far as the record shows, no one connected with the case had ever heard of Torrance. No one by the names of Tommy Russel and Brownie Jackson had stopped at the tourist camp. The cabin occupied by Brown and Miss Haft was not the third or fourth from the road, but was the fifth. After Brown lost his property, he immediately, that same night, reported the matter to Mr. Rogers, a young man who had charge of the camp, and also to Mr. Stephenson, the man who operated the camp, and they, in company with Mr. Brown, searched diligently the cabin Brown had occupied, looking on the floor, under the bed, and all over, and no purse was on the floor then, although Torrance claimed to have found later a similar pocket book in which was similar money. Cecil Smith was not produced to support Torrance so far as he might, and neithed did Tommy Russel or Brownie Jackson appear at the hearing of the motion for new trial.

Among other things requisite before a new trial will be granted for alleged newly discovered evidence are that the testimony claimed to have been discovered since the trial must (a) probably be true, and (b) it must appear reasonably probable and that it would change the result upon another trial. See Branch's Ann. Tex. P. C., sec. 192, and cases thereunder cited; Nothaf v. State, 91 Texas Crim. Rep., 378, 239 S. W., 215, 23 A. L. R., 1374; Gregory v. State, 105 Texas Crim. Rep., 674, 290 S. W., 176; McDowell v. State, 96 Texas Crim. Rep., 512, 258 S. W., 186. The probable effect of claimed newly discovered evidence is primarily for the trial judge who passess upon the motion for new trial, and the appellate court will not interfere with his action in denying the motion, if under all the facts no abuse of his judicial discretion is shown. Robinson v. State, 116 Texas Crim. Rep., 523, 28 S. W. (2d) 158. The bill of exception does not show the trial judge's reasons for overruling the motion, but, in view of the evidence produced by the state upon the hearing of the motion, such reasons may not be hard to discover. He was well within his discretion with a safe margin over.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*